CHILES, HEIDER & CO., INC., APPELLEE, V. PAWNEE MEADOWS,
INC., A NEBRASKA CORPORATION, APPELLANT, RICHARD WOZNIAK
ET AL., APPELLEES.

396 N.W.2d 111

Filed November 7, 1986.    No. 85-450.

August P. Ross and Annette E. Mason of Ross & Mason,
P.C., for appellant.

Michael G. Lessmann and Thomas E. Johnson of Baird,
Holm, McEachen, Pedersen, Hamann & Strasheim, for
appellee Chiles, Heider & Co.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN,
and GRANT, JJ.

PER CURIAM.

This is the second appearance of this case in this court. The
facts of the case are set out in detail in our earlier opinion,
*Chiles, Heider & Co. v. Pawnee Meadows*, 217 Neb. 315, 350
N.W.2d 1 (1984) (*Chiles, Heider I*), and will not be repeated
herein except to the extent necessary to make this opinion clear.

For the purpose of developing certain property described as
Lots 1 to 58, inclusive, in Pawnee Meadows, a subdivision in
Saunders County, Nebraska, Sanitary and Improvement
District No. 4 of Saunders County, Nebraska, was created
pursuant to the provisions of Neb. Rev. Stat. §§ 31-701 et seq.
(Reissue 1978). In August of 1974 Chiles, Heider and S.I.D.
No. 4 entered into a letter agreement in which Chiles, Heider
agreed to purchase certain construction fund warrants issued
by S.I.D. No. 4. As a part of that agreement to purchase,
Chiles, Heider and Pawnee Meadows, Inc., entered into a
separate agreement in which Pawnee Meadows agreed that

> [a]t any time on or after a date four (4) years after the date
> of the first warrant issued by SID and purchased by
> Chiles, Heider, upon request of Chiles Heider, [Pawnee
> Meadows] will purchase from Chiles, Heider, or any other
> holder of warrants issued by SID, all unpaid warrants

issued by SID requested by Chiles, Heider to be so purchased.

To secure its performance Pawnee Meadows executed and delivered to Chiles, Heider a mortgage covering the property located within S.I.D. No. 4 and owned by Pawnee Meadows. It is significant for an understanding of the problem presented by this appeal to recognize, as we determined in *Chiles, Heider I*, that the agreement between Pawnee Meadows and Chiles, Heider was not a guaranty of S.I.D.'s obligation on the warrants but, rather, was a separate and independent agreement entered into between Pawnee Meadows and Chiles, Heider. Further, it is important to recognize that the mortgage executed by Pawnee Meadows and given to Chiles, Heider was not to secure the payment of the warrants issued by S.I.D. No. 4 but, rather, was to secure the agreement of Pawnee Meadows to repurchase the warrants, under certain conditions, upon request by Chiles, Heider.

At a time 4 years after the date that the first warrant was issued by S.I.D. and purchased by Chiles, Heider, the latter requested Pawnee Meadows to purchase all of the warrants. Pawnee Meadows refused to do so, and Chiles, Heider instituted foreclosure proceedings. Following trial, a decree of foreclosure was entered. It was that decree which we reviewed in *Chiles, Heider I*. Essentially, we affirmed all that the district court had ordered, except that we required Chiles, Heider to tender to the clerk of the district court the warrants which Chiles, Heider desired Pawnee Meadows to purchase. Chiles, Heider did so, and when Pawnee Meadows failed to purchase the warrants within the time allowed, the order of foreclosure was carried out. At the sale, Chiles, Heider purchased the property for the sum of $44,672.93, far less than the principal amount due and owing on the warrants. The district court subsequently entered an order confirming the sale and directing that the unpurchased warrants, then in the possession of the clerk of the district court, be returned to Chiles, Heider. Pawnee Meadows has once again appealed to this court, contending that the district court erred (1) in directing the distribution of the proceeds by returning to Chiles, Heider all of the warrants and not requiring the payment of the bid for

Pawnee Meadows' benefit or (2) in not directing that warrants, to the extent that the same could be purchased by the bid, be delivered to Pawnee Meadows.

While generally we disagree with the arguments presented by Pawnee Meadows, we are in complete accord with the statement contained in Pawnee Meadows' brief that "this is not the usual mortgage foreclosure where there is a debt due and owing and a mortgage given in security for said debt." Brief for Appellant at 6. It is, of course, the unusual nature of the action which creates some of the difficulty. We believe, however, that when the situation is properly viewed, the order of the district court was, in all respects, correct and should be affirmed.

Turning first to Pawnee Meadows' second assignment of error, we have already disposed of that argument. In *Chiles, Heider I*, we held that the obligation imposed upon Pawnee Meadows to repurchase the warrants was not a guaranty but, rather, an independent obligation assumed by Pawnee Meadows. The mortgage given by Pawnee Meadows was to secure its performance to purchase the warrants, and not to satisfy the S.I.D.'s obligation to pay the warrants. Furthermore, *Chiles, Heider I* clearly held that Pawnee Meadows was not entitled to purchase less than all of the warrants tendered by Chiles, Heider.

To now hold that Pawnee Meadows is entitled to receive physical possession of part of the warrants simply flies in the face of what we have already determined. The question of how the money is to be allocated by Chiles, Heider has not been determined by this action and undoubtedly is a matter between Chiles, Heider and its warrant holders. It cannot be decided in this action, where the warrant holders were neither given notice that such matter would be resolved nor made parties to the action. The assignment of error is simply without merit and must be overruled.

To the same extent, Pawnee Meadows' first assignment of error must be overruled. While the assignment of error is unclear and the argument made by appellant in support of the assignment does little to clear up the confusion, we assume appellant believes that Chiles, Heider should have been required to tender a check in the amount of $44,672.93. We are

simply unable to comprehend how the formality of requiring Chiles, Heider to execute and deliver a check to the clerk of the district court in the amount of $44,672.93, only to receive back from the clerk of the district court a check in the amount of $44,672.93 is necessary in order to somehow give validity to the transaction. Where the individual who is to receive the proceeds is the same individual who is required to pay in the proceeds, a memo entry without a check seems to this court to be sufficient. How Pawnee Meadows would realize a greater benefit if the above formality were followed is simply beyond comprehension. The mortgage given by Pawnee Meadows was not to secure the payment of the warrants but, rather, was to secure the performance by Pawnee Meadows to purchase the warrants. This it failed to do, and for that reason the property was foreclosed. There is nothing more for it to receive by way of benefit. Nor is it entitled to possession of the warrants. Those warrants are still outstanding obligations of the S.I.D. They are not an obligation of Pawnee Meadows. Therefore, the unpaid warrant holders are entitled to have the warrants returned to them. While we did not in *Chiles, Heider I* direct what should be done with the warrants in the event that Pawnee Meadows did not purchase all of them, it seems obvious that the district court, in entering its order confirming the sale, was required to order their return. As noted in 5 Am. Jur. 2d *Appeal and Error* § 992 at 419-21 (1962):

> On remand, the trial court may consider and decide any matters left open by the appellate court and is free to make any order or direction in further progress of the case, not inconsistent with the decision of the appellate court, as to any question not presented or settled by such decision. . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. The mandate is to be interpreted according to the subject matter and, if possible, in a manner to promote justice.

We believe that is precisely what the district court did in the instant case. The district court did not ignore our mandate in *Chiles, Heider I*, nor expand it, but, rather, did precisely what we ordered it to do, and then proceeded to take such further

necessary action as required by our opinion to conclude the matter following the foreclosure sale. The district court's order was not a modification of the judgment, as was contended by Pawnee Meadows. We are unable to find any error in what was done by the district court, and for that reason the actions taken by the district court are in all respects affirmed.

AFFIRMED.

CAPORALE, J., not participating.